IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE COCA-COLA ENTERPRISES INC., ERISA LITIGATION | MASTER FILE NO. 1:06-CV-0953 (TWT) |

ORDER

This is a consolidated class action brought under the Employee Retirement
Income Securities Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.  It is before the
Court on the Defendants' Motion to Dismiss [Doc. 23].  For the reasons set forth
below, the Defendants' motion is GRANTED.

I. BACKGROUND

A.     Plaintiffs and the ERISA Plan

Coca-Cola Enterprises Inc. ("CCE") is the world's largest bottler of Coca-Cola
products.  The Plaintiffs–Mark Adams, Manuel K. Cole, and Patrick Quinn–are
employees of CCE.  They have brought this suit on behalf of themselves and a class
of all other participants and beneficiaries of four CCE employee investment and

savings plans regulated by ERISA.[1]  All three of these Plaintiffs were participants in the Matched Employee Savings and Investment Plan ("the Plan").

The Plan is an "employee pension benefit plan" as defined under ERISA, and is a legal entity that can sue or be sued.  See 29 U.S.C. §§ 1002(2)(A) & (3) and 1132(d)(1).  Participants in the Plan are permitted to set aside a certain percentage of their salaries and invest this eligible compensation through the Plan in various investment options.  The investment options include stock funds composed–in whole or in part–of CCE stock.  (Defs.' Mot. to Dis., Ex. B, § V.1.A.)[2]  CCE is the Plan Sponsor, and the Global Retirement Programs Committee ("the Committee") is the designated Plan Administrator.  (Defs.' Mot. to Dis., Ex. A, at 20.)  CCE's Board of Directors is responsible for appointing the members of the Committee.  (Id., Ex. B., § VII.1.)

---

[1]Specifically, the CCE plans listed in the Complaint include: (1) the Matched Employee Savings and Investment Plan ("the MESIP"); (2) the Savings Plan for Organized Employees of Southern New England ("SPSNE"); (3) the Enterprises Bargaining Employees 401(k) Plan ("the BEP"); and (4) the Savings and Investment Plan For Certain Bargaining Employees ("the SIP").

[2]Although neither party argues to the contrary, the Court notes that it is proper to consider ERISA plan documents on a motion to dismiss because the Complaint references them and they are central to the Plaintiffs' claims.  See Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1329 (11th Cir. 2006) (stating that the defendant's attachment of ERISA documents did not convert a dismissal motion into one for summary judgment).

B.      Defendants

The Plaintiffs bring this action against CCE, as well as several individual CCE employees.   Specifically, the individual Defendants include: (1) Lowry F. Kline, Chairman of the Board since April 2002; (2) John R. Alm, Chief Executive Officer since December 2003; (3) Patrick J. Mannelly, Chief Financial Officer; (4) Rick L. Engum, Vice President, Controller, and Principal Accounting Officer; (5) E. Liston Bishop, III, Vice President, Secretary and Deputy General Counsel; (6) G. David Van Houten, Jr., Executive Vice President, Chief Operating Officer and President of the North American Business Unit; (7) Summerfield K. Johnston, Jr., a Director since April 2002 and CEO from 1991 until April 1998 and again from January 2000 through April 2001; (8) Joyce King-Lavinder, Vice President, Treasurer, and a member of the Committee; and (9) Does 1-50, unnamed individuals–at least some of whom are members of the Committee–that the Plaintiffs have not yet been able to identify. (Compl., ¶¶ 27-34, 42.)

C.      Plaintiffs' Allegations

The First Consolidated Complaint ("the Complaint") alleges the Defendants breached fiduciary duties under ERISA.  These duties include the duty of prudence in making Plan investments, the duty of disclosure, the duty to monitor, and the duty of loyalty.  See 29 U.S.C. § 1104(a)(1).

The factual allegation that underpins all of the Complaint's ERISA claims is that CCE engaged in and continues to engage in a fraudulent "channel stuffing" scheme, which involves placing excess soft drink inventory into its distribution channels to meet sales and earnings targets.  This scheme allegedly allows for the premature and improper recognition of revenue and improves the company's reported sales volumes, revenue, and earnings.  (Compl., ¶¶ 9-13, 88.)

The Plaintiffs contend that the Defendants knew or should have known about this channel stuffing, yet failed either to prevent the Plan from imprudently investing in CCE stock or reveal this fraudulent scheme to the Plan's beneficiaries.  Specifically, between March 11, 2004, and the present ("the Class Period"), the Plaintiffs allegedly "allocated significant amounts of their individual contributions to CCE stock and maintained their assets in that stock because of positive statements by CCE and the Individual Defendants ... about CCE and its business."  (Id., ¶ 3.)  Moreover, the Plaintiffs allege that the Defendants made numerous disclosures during the Class Period that were false and that artificially inflated the price of CCE stock.  These disclosures include: (1) quarterly and annual financial reporting documents (Form 10-Q's and Form 8-K's) for the years 2003 and 2004; (2) official statements made by the Defendants directly to the public through press releases; and (3) statements made to various analysts and investment institutions during earnings

conference calls that were then reported to the public. (<u>Id.</u>, ¶¶ 96-112.) Through these different communications, the Defendants provided information to the public about various aspects of CCE's business in North America and Europe including sales volume numbers, earnings per share, operating income, net price per case, and net income. The Plaintiffs contend that these statements were materially false and misleading because the Defendants "omitted to disclose or misrepresented the strength of CCE's business including its European business, and failed to disclose that CCE was artificially inflating its reported sales by an aggressive channel-stuffing campaign." (<u>Id.</u>, ¶ 95.)

On July 29, 2004, CCE issued a press release stating that it would not meet its previously estimated earnings, due primarily to declines in its European sales volume. The Defendants maintained that these declines were caused mainly by unseasonably cool, rainy weather. (<u>Id.</u>, ¶¶ 127-132.) In response to this disclosure, CCE's stock took a precipitous drop, falling approximately 25% on July 29, 2004, alone. (<u>Id.</u>, ¶ 133.) The Plaintiffs contend that, through this press release, CCE partially revealed to investors and to the market the truth about its fraudulent channel stuffing practices. (<u>Id.</u>, ¶ 136.)

The Plaintiffs subsequently filed this ERISA action against the Defendants.[3] They make the following eight claims: (1) breach of fiduciary duty by designating CCE stock as an investment option and permitting the Plan to invest in CCE stock; (2) failure to prudently and loyally manage the assets of the Plan; (3) failure to monitor the Plan and provide accurate information; (4) failure to monitor the Plan and provide the administrators of the Plan and other fiduciaries with accurate information; (5) failure to provide complete and accurate information to the Plan's participants; (6) breach of the duty of loyalty; (7) co-fiduciary liability; and (8) engaging in prohibited transactions under ERISA § 406.  The Defendants have now moved to dismiss these claims.

## II. STANDARD OF REVIEW

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief.  Fed. R. Civ. P. 12(b)(6); see Conley v. Gibson, 355 U.S. 41, 47 (1957); Linder v. Portocarrero, 963 F.2d 332 (11th Cir. 1992).  In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.  See Quality Foods de Centro America, S.A. v.

---

[3]There is also a corresponding securities fraud action before this Court arising out of the same facts.  See In re Coca-Cola Enters. Inc. Sec.. Litig., Civil Action No. 1:06-CV-00275-TWT.

<u>Latin American Agribusiness Dev. Corp., S.A.</u>, 711 F.2d 989, 994-95 (11th Cir. 1983).  Generally, notice pleading is all that is required for a valid complaint.  <u>See</u> <u>Lombard's, Inc. v. Prince Mfg., Inc.</u>, 753 F.2d 974, 975 (11th Cir. 1985), <u>cert. denied</u>, 474 U.S. 1082 (1986).  Under notice pleading, the plaintiff need only give the defendant fair notice of his claim and the grounds upon which it rests.  <u>Id.</u>

## III. <u>DISCUSSION</u>

A.   <u>Standing</u>

The Defendants first contend that the Plaintiffs do not have standing to bring this action on behalf of three out of the four ERISA plans listed in the Complaint because the Plaintiffs are not current participants in those plans.  Specifically, none of these Plaintiffs has ever been a participant in the Savings Plan for Organized Employees of Southern New England ("the SPSNE") or the Savings and Investment Plan For Certain Bargaining Employees ("the SIP").  As to the Enterprises Bargaining Employees 401(k) Plan ("the BEP"), the Defendants argue that only Plaintiff Adams was a participant in this particular plan, and he received his final distribution of benefits in September 2004, prior to the time this lawsuit was filed.  (Decl. of Darlina Walker, ¶ 3.)

Under ERISA, all "participants" have standing to bring civil actions to enforce their rights under the terms of a covered benefit plan or to enforce ERISA's

provisions.  See 29 U.S.C. § 1132(a).  A "participant" is defined under the statute as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ..."  29 U.S.C. § 1002(7).  According to the Supreme Court, this term also includes former employees who "have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989) (citations and quotation marks omitted).  Ordinarily, however, only issues of standing that arise under Article III of the Constitution must be determined by the Court before deciding whether the claimant has a viable cause of action.  Coan v. Kaufman, 457 F.3d 250, 256 (2d Cir. 2006) (citing Steel Co. v. Citizens for a Better Env., 523 U.S. 83, 94-95 (1998)).  Here, the parties dispute the Plaintiffs' status as "participants" under ERISA, which is a statutory requirement rather than a constitutional one.  Id.  Because the Defendants concede that these Plaintiffs have standing to sue under at least one employee benefit plan –  the MESIP –  the Court declines to address at this point in the proceedings whether they can also sue under these other plans.  The Court will assume for the purposes of this motion that they have standing to sue under all four plans.

B.   Pleading Fraud

The Defendants contend that the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure should apply to the Plaintiffs' claims.  Specifically, they argue that the Plaintiffs' allegations of fraud, i.e., the alleged channel stuffing activities, are intrinsic to each and everyone of the Plaintiffs' claims under ERISA. Accordingly, so their argument goes, the underlying fraud is a predicate to all claims and none can proceed unless the fraud has been sufficiently pled.

1.   Rule 9(b)'s Pleading Standard

Rule 9(b) states that with respect to a claim of fraud, "the circumstances constituting fraud ... shall be stated with particularity."  Fed. R. Civ. P. 9(b).  A plaintiff satisfies Rule 9(b) when the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; and (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.

Ziemba v. Cascade Intern., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).  Put more succinctly, this rule requires that a plaintiff plead all the elements of the first paragraph of a newspaper story: "the who, what, when, where and how."  Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006); In re Scientific-Atlanta, Inc. Sec. Litig., 239 F. Supp. 2d 1351, 1358 (N.D. Ga. 2002).  Rule 9(b) and its

requirements serve an "important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'"   Ziemba, 256 F.3d at 1202 (citation omitted).   As the Eleventh Circuit recently stated:

> When a plaintiff does not specifically plead the minimum elements of his allegation, it enables him to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and at worst, ... baseless allegations used to extract settlements.   The particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim...If given such a ticket, the next stage of the litigation is clear. The Plaintiff will request production of every ... claim submitted by the Defendant during the time period corresponding to Plaintiff's claims. At that point, the Defendant may decide to settle the case to avoid the enormous cost of such discovery and the possible disruption of its ongoing business. On the other hand, the Defendant may choose to resist the discovery. In that case, the Court will be presented with the dilemma of allowing an unlimited fishing expedition or no discovery at all because of the difficulty in fashioning logical and principled limits on what has to be produced. The particularity requirement of Rule 9(b), if enforced, will not only protect defendants against strike suits, but will result in claims with discernable boundaries and manageable discovery limits.

United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1359-60 (11th Cir. 2006) (internal citations and punctuation omitted); see also United States ex rel. Clausen v. Laboratory Corp. of Am., 198 F.R.D. 560, 564 (N.D. Ga. 2000), aff'd, 290 F.3d 1301 (11th Cir. 2002); In re Eagle Building Techs., Inc., Sec. Litig., 319 F. Supp. 2d 1318, 1325 (S.D. Fla. 2004) ("The purpose of Rule 9(b) is to ensure that the allegations of

fraud are specific enough to provide sufficient notice of the acts complained of and to eliminate those complaints filed as a pretext for discovery of unknown wrongs.") (citation and punctuation omitted).

        2.    <u>Application to ERISA</u>

The Plaintiffs contend that because ERISA demands only notice pleading for fiduciary duty claims, their underlying allegations of fraudulent channel stuffing are not subject to the heightened pleading requirements of Rule 9(b).  Among the district and circuit courts that have addressed this issue, there is a split of authority.  Several have stated that the requirements of Rule 9(b), although not generally applied to ERISA claims, must be met where the underlying allegations are grounded in fraud. <u>See</u> <u>Concha v. London</u>, 62 F.3d 1493, 1502 (9th Cir. 1995); <u>In re Fruehauf Trailer Corp.</u>, 250 B.R. 168, 206 (D. Del. 2000); <u>In re Ikon Office Solutions, Inc. Sec. Litig.</u>, 86 F. Supp. 2d 481, 487-88 (E.D. Pa. 2000); <u>see also</u> <u>Woods v. Southern Co.</u>, 396 F. Supp. 2d 1351, 1360 (N.D. Ga. 2005) (Story, J.) (acknowledging that although ERISA generally requires only notice pleading, "[a] more rigorous pleading requirement may be imposed when a plaintiff's ERISA claim amounts to an allegation of fraud").  As the Plaintiffs point out, however, many other courts have determined that a fiduciary claim brought under ERISA need only provide notice pleading, regardless of whether the claims are based on an underlying fraud.  <u>See, e.g.</u>, <u>In re Cardinal Health, Inc.</u>

ERISA Litig., 424 F. Supp. 2d 1002, 1015 (S.D. Ohio 2006); In re Polaroid ERISA

Litig., 362 F. Supp. 2d 461, 469-70 (S.D.N.Y. 2005); In re AEP ERISA Litig., 327 F.

Supp. 2d 812, 822 (S.D. Ohio 2004); ADC Telecomm., Inc. ERISA Litig., 2004 WL

1683144, at *3 (D. Minn. July 26, 2004); In re Enron Corp. Sec., Derivative & ERISA

Litig., 284 F. Supp. 2d 511, 652 (S.D. Tex. 2003).

Although the Eleventh Circuit has never ruled on this discrete issue, the court

has answered affirmatively the question of whether there are circumstances where

nonfraud securities claims would need to be pled with particularity in accordance with

Rule 9(b). In Wagner v. First Horizon Pharmaceutical Corp., 464 F.3d 1273 (11th Cir.

2006), the complaint alleged nonfraud claims under sections 11 and 12 of the

Securities Act, see 15 U.S.C. §§ 77k(a), 77l(a)(2), and a securities fraud claim under

section 10(b) of the Exchange Act.  See 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

The court first discussed the requirements of Rule 9(b) and emphasized the rule's twin

purposes of providing notice to and protecting the reputation of the defendant.  Id. at

1277.  The court then provided the hypothetical of a plaintiff bringing two state law

claims for battery and fraud.  Under such circumstances, only notice pleading would

be required for the battery claim.  Id. at 1278.  Such a scenario was distinct from the

present  dispute,  the  court  explained,  because  the  complaint  alleged  a

misrepresentation in the nonfraud claims that was "also the beginning of-or otherwise

part of-the predicate fraud for the Rule 10(b)(5) securities fraud claim." Id.  The

Eleventh Circuit thus concluded that:

> [A] § 11 or § 12(a)(2) claim must be pled with particularity when the
> facts underlying the misrepresentation at stake in the claim are said to be
> part of a fraud claim, as alleged elsewhere in the complaint. It is not
> enough to claim that alternative pleading saves the nonfraud claims from
> making an allegation of fraud because the risk to a defendant's reputation
> is not protected. It would strain credulity to claim that Rule 9(b) should
> not apply in this allegation: The defendant is a no good defrauder, but,
> even if he is not, the plaintiff can still recover based on the simple
> untruth of the otherwise fraudulent statement. Nor is it enough to present
> a general disclaimer in an attempt to immunize the nonfraud claims from
> the Rule 9 requirements, for the same common sense reasons. The
> purpose of the rule is to protect a defendant's good will and reputation
> when that defendant's conduct is alleged to have been fraudulent. This
> conclusion does not add new elements to the nonfraud claims, nor does
> it elevate the pleading standard when the claim is not alleged to have
> been part of another fraud-based claim. If plaintiffs bring a § 11 or §
> 12(a)(2) claim without alleging the misrepresentation at issue in the
> claim was fraudulent, they would avoid the heightened pleading
> requirements of Rule 9(b). On the other hand, if the plaintiffs are
> claiming that the § 11 or § 12(a)(2) misrepresentation is part and parcel
> of a larger fraud, then the rule's protective purpose attaches, and
> plaintiffs must plead with particularity. In a complaint subject to Rule
> 9(b)'s particularity requirement, plaintiffs retain the dual burden of
> providing sufficient particularity as to the fraud while maintaining a
> sense of brevity and clarity in the drafting of the claim, in accord with
> Rule 8.

Id. at 1278.

The Eleventh Circuit's holding provides clear instruction for this Court in

deciding what pleading standard applies here.  Applying a particularity requirement

to the channel stuffing allegations in this instance does not add new elements to the

nonfraud fiduciary duty claims brought under ERISA.  Rather, such a requirement merely complies with Rule 9(b)'s purpose of mandating that a claimant sufficiently plead fraudulent allegations that form the factual predicate upon which all his ERISA claims are based.  As emphasized by the Defendants, the Complaint presupposes the existence of a fraud that they knew about, participated in, benefitted from, and concealed.  None of the Plaintiffs' claims can succeed if this fraudulent scheme cannot be proven.  Yet the Plaintiffs ask this Court to allow them to proceed to discovery based only on their notice pleading that such channel stuffing took place.  Permitting this action to go forward under such a standard would not only threaten CCE's goodwill and reputation, but would also allow an impermissible fishing expedition by the Plaintiffs.  The Court thus concludes that Rule 9(b)'s pleading standards must apply to the Complaint.

The Court finds that the Plaintiffs' channel stuffing allegations clearly fail to meet Rule 9(b)'s particularity requirements.  To restate, in order to satisfy the Rule, a plaintiff must allege the who, what, when, where, and how of the fraudulent misrepresentation.  Put differently, "a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."  United States ex rel. Clausen, 290 F.3d at 1310 (citations and punctuation omitted); see also

<u>American United Life Ins. Co. v. Martinez</u>, 480 F.3d 1043, 1070 (11th Cir. 2007) (dismissing as insufficient under Rule 9(b) allegations that failed to provide any details as to how the defendant accomplished the alleged fraud or which agents participated).

Here, although the Complaint identifies statements that did not disclose CCE's alleged channel stuffing and were thus supposedly materially false and misleading, (<u>see</u> Compl., ¶¶ 95-112), the pleadings include almost no specific allegations regarding how this channel stuffing transpired. The following two paragraphs are the only places in the Complaint where the Plaintiffs specifically address this allegedly fraudulent activity:

> 88. In order to artificially increase CCE's reported financial results, Defendants engaged in routine, systematic and wide-spread channel-stuffing practices that improperly improved CCE's reported sales volumes, revenue, and earnings. CCE personnel routinely stuffed CCE's finished soft drink and beverage products into the sales channels of its retailer and reseller customers in order to meet the Company's internally planned soft drink and beverage sales volume figures, as well as revenue and earnings targets and publicly stated future earnings guidance.
>
> 89. These channel stuffing practices pushed excess products onto customers through a variety of mechanisms including: (i) advance warnings of future price increases; (ii) price discounts for accepting extra product volume beyond the customers' immediate needs' (iii) delivering more product than the customer requested; (iv) providing various cash incentives to customers termed as "marketing allowances"; (v) providing non-cash incentives to customers ranging from tickets to sporting events, signed sports memorabilia, and Coca-Cola trademarked items; (vi) "park and hold" strategies whereby CCE delivered large shipments of product

– usually tractor trailer loads – to customers, leaving the trailers in the parking lot; and (vii) granting customer the right to return expired or unsellable product.

(Compl., ¶¶ 88-89.)   Clearly absent from these conclusory allegations is any information regarding when this alleged channel stuffing occurred in relation to the allegedly false financial statements.  The Complaint suffers from terminal vagueness when it comes to the Defendants' alleged knowledge of the channel stuffing practices and how they were affecting CCE's earnings and financial statements.  Furthermore, the Plaintiffs fail to meet the "how" requirement, as they do not explain with particularity the details of how the Defendants' actions were fraudulent or how this practice was so widespread that its disclosure caused a significant drop in the price of CCE stock.  The Plaintiffs must be able to allege facts sufficient to demonstrate that the channel stuffing was so rampant that it substantially and materially affected the distribution volume of CCE products and artificially inflated the price of its stock.  The Complaint's general allegations fail to meet this requirement, and this Court accordingly concludes that the Defendants' dismissal motion is warranted.

The Defendants further allege that the Complaint fails to plead a causal link between the alleged channel stuffing and the Plaintiffs' losses.  In essence, the Defendants seek to apply the Supreme Court's holding in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 340 (2005).  In that case, the Court held that it was

insufficient for a securities fraud claimant to plead simply that a company's stock price at the time of purchase was inflated because of the defendant's misrepresentation.  In ERISA cases, generally loss causation is an issue of fact and is thus not properly considered at this early stage in the proceeding.  In re Westar Energy, Inc., ERISA Litig., 2005 WL 2403832, at *11 (D. Kan. September 29, 2005); see also Allison v. Bank One-Denver, 289 F.3d 1223, 1239 (10th Cir. 2002); Kuper v. Iovenko, 66 F.3d 1447, 1460 (6th Cir. 1995) (assessing evidence of a causal link at summary judgment); Henry v. Champlain Enters., Inc., 288 F. Supp. 2d 202, 216 (N.D.N.Y. 2003) (same).  This case, however, is different because it is a securities fraud case masquerading as an ERISA case.  Loss causation is an element of the claim, and the Plaintiffs should be required to allege facts that show it.  If they cannot do so, the case is doomed to fail.

### 3.    Individual Claims

Even if the Plaintiffs properly meet the pleading requirements, the Court further concludes that several of the individual counts in the Complaint cannot succeed as a matter of law.  The Court thus specifically addresses each of the Plaintiffs' allegations below.

### a.    Counts I and II - Duty of Prudence

Both Counts I and II are, in essence, claims for breach of the Defendants' duty of prudence.  Count I alleges that the Defendants acted imprudently "by allowing the Plan to purchase and hold CCE shares during the Class Period and by allowing the CCE shares to remain as investment options under the Plan."  (Compl., ¶ 160.)  The Plaintiffs contend that the Defendants "should have terminated CCE stock as an investment option, halted the purchase of CCE shares and sold all their shares in CCE stock."  (Id., ¶ 161.)  They further allege a fiduciary breach by allowing the Company Match portion of the Plan to purchase CCE stock when they should have known that CCE stock was artificially inflated.  (Id., ¶ 165.)  Count II is based on an alleged failure "to prudently and loyally manage the assets of the Plan" by continuing "to offer and require the CCE securities as an investment requirement for the Plan and to direct and approve Plan investment in the CCE securities, instead of other investments."  (Id., ¶ 174.)

ERISA imposes several duties upon those individuals that act as fiduciaries to plans governed by the statute.  Perhaps foremost among these responsibilities is the duty of prudence.  The "prudent man" standard of care includes the duty: (1) to act solely in the interest of the participants and beneficiaries; (2) to exercise care, skill, prudence, and diligence; (3) to diversify the investments of the plan to minimize risk of loss unless imprudent to do so under the circumstances; and (4) to act in accordance

with the documents and instruments governing the plan unless to do so would violate

ERISA.  29 U.S.C. § 1104(a)(1); accord Pedraza v. Coca-Cola Co., 456 F. Supp. 2d

1262, 1270 (N.D. Ga. 2006).  Although fiduciaries are generally required to diversify

a plan's investments, ERISA has an exception for eligible individual account plans

("EIAP's").  The law states in relevant part that:

> In the case of an eligible individual account plan (as defined in section
> 1107(d)(3) of this title), the diversification requirement of paragraph
> (1)(C) and the prudence requirement (only to the extent that it requires
> diversification) of paragraph (1)(B) is not violated by acquisition or
> holding of ... qualifying employer securities.

29 U.S.C. § 1104(a)(2).  An EIAP is defined as "(i) a profit-sharing, stock bonus,

thrift, or savings plan [or] (ii) an employee stock ownership plan," which "explicitly

provides for acquisition and holding of qualifying employer securities."  Id. §

1107(d)(3)(A) and (B).  Accordingly, EIAP fiduciaries "do not have a duty to

diversify and do not act imprudently by not diversifying the assets of an EIAP."

Smith v. Delta Air Lines, Inc., 422 F. Supp. 2d 1310, 1325 (N.D. Ga. 2006).

Here, there is no dispute that the MESIP and the other plans qualify as EIAP's.

(Pls.' Resp. to Mot. to Dis., at 26-27.)  Because the Plan expressly establishes CCE

stock as an investment option, the Committee has the discretion only to select

additional investment options, not to eliminate CCE stock from the mix.  (Defs.' Mot.

to Dis., Ex. B, § V.A.2.; Ex. A, at 8.)  The Plaintiffs contend that the Defendants are

not exempt under this section because Plan fiduciaries still have a duty "to discharge their overarching ERISA-mandated fiduciary duties of prudence and loyalty." (Pls.' Resp. to Mot. to Dis., at 27.) In support of this position, they cite inter alia <u>Moench v. Robertson</u>, 62 F.3d 553 (3d Cir. 1995), where the Third Circuit addressed this exception to the duty of prudence provided to fiduciaries of EIAP plans. There, the employer, Statewide Bancorp, offered its employees the opportunity to participate in an employee stock ownership plan ("ESOP") that was designed to invest primarily in Statewide's common stock. Despite a precipitous decline in the value of this stock during the class period and the ESOP committee's knowledge of Statewide's precarious financial condition, the committee continued to invest regularly in Statewide. Moench, a former Statewide employee, filed a lawsuit claiming that the committee had breached its fiduciary responsibilities under ERISA. The court acknowledged that ESOP's were generally exempt from ERISA's fiduciary requirements, but found that ESOP fiduciaries should still be expected "to administer ESOP investments consistent with the provisions of both a specific employee benefits plan and ERISA." <u>Id.</u> at 569 (quoting <u>Kuper v. Quantum Chem. Corp.</u>, 852 F. Supp. 1389, 1395 (S.D. Ohio 1994)). The court held that an ESOP fiduciary who invests in the employer's stock is entitled only to a presumption that it acted consistently with ERISA and that its decision should be reviewed for an abuse of discretion. <u>Id.</u> at 571.

Several cases from this jurisdiction have recently addressed this <u>Moench</u> standard, and have declined to follow it.  <u>See</u> <u>Pedraza</u>, 456 F. Supp. 2d at 1270; <u>Smith</u>, 422 F. Supp. 2d at 1325.  In <u>Pedraza</u>, for example, a plaintiff employee filed an ERISA class action contending that Coca-Cola had engaged in a business practice called "gallon pushing," which encouraged the company's bottlers to buy more concentrate than they needed and increase Coca-Cola's sales in the short run.[4]  The plan at issue contained two related investment components, one providing for the employee's choice of investment and the other for a company match or ESOP.  The choice-of-investment component allowed each participant to deduct a percentage of his salary and place it into various investment funds.  The employees were solely responsible for the selection of investment funds.  <u>Id.</u> at 1271.  The ESOP component provided that Coca-Cola would match an employee's contributions in his investment funds through the purchase of Coca-Cola stock.  "In other words, an employee who acquires investments in the choice-of-investment component would automatically acquire an interest in Coca-Cola stock in the ESOP component."  <u>Id.</u> at 1270.  Among the plaintiff's claims was an allegation that the ESOP's Assets Management Committee had failed "to prudently and loyally manage" the plan's assets because they failed to "take any action to protect participants from losses as a result of the

_____

[4]The defendants included not only the company itself, but also its officers, directors, and members of its Benefits and Assets Management Committees.

Plan's investment in Coke stock." Id. at 1273.  The plaintiff argued that the court should follow Moench and hold that the Assets Management Committee had a responsibility to disregard the plan's provisions and prevent the heavy investment in Coca-Cola stock.  In addressing Moench, Judge Evans first acknowledged that the Eleventh Circuit had never ruled on this issue.  After discussing Moench in detail along with several other circuit and district opinions addressing its "presumption/abuse of discretion formula," Judge Evans concluded that Moench "may run afoul of ERISA's express provisions." Id. at 1275.  She further found that, even if applied, this standard was proper only in situations "where the employer is on the brink of collapse and the employees are not able to sell their stock in the plan." Id. at 1276.  Specifically, she explained that:

> If any combination of factors potentially can overcome Moench's presumption, ERISA fiduciaries are left with no meaningful guidance as to when they should, or should not, ignore an ERISA plan's requirement to offer company stock. A fiduciary who decides to scrap the ESOP is just as apt to be sued as he would be if he enforced the plan provisions. This uncertainty fosters expensive, speculative litigation. It could also cause employers to be hesitant to offer the benefits of an ESOP to its employees. Furthermore this case ... presents a situation where the fiduciary (the Assets Management Committee) has no discretion as to investing in Coca-Cola stock where (a) the plan participant directed it or (b) the stock was purchased with Coca-Cola's matching contribution. Finally, assuming that the Court should apply the Moench formula, the undersigned would still rule that Plaintiff has not alleged sufficient facts to overcome Moench 's presumption of prudence.  Taking as true all of Plaintiff's allegations regarding the gallon-pushing strategy, the downturns in Russia and India, the Burger King debacle, and the

contaminated vending machines, and accepting that the Company's stock declined from $66.50 to $40.97 a share during the Class Period, that would not be enough to justify a decision by the Assets Management Committee to discontinue matching employee contributions with Coke stock, delete Coke stock from the optional investment choices, or to sell off Coke stock in the Coca-Cola Stock Fund in the face of the contrary provisions of the Plan and the Trust. The drastic action Plaintiff advocates would only be appropriate in the case of a company on the brink of collapse, where employee participants in the plan have no further incentive to participate. As Defendants have pointed out, Coca-Cola was a financially robust company with substantial net revenues throughout the Class Period.

Id. at 1276 (citations omitted).  The claim was dismissed.

Here, this Court first finds the Pedraza opinion to be sound and well reasoned and concurs with Judge Evans's determination that the Moench standard runs counter to the plain language of ERISA.  Furthermore, as held by both Smith and Pedraza, even if this Moench standard were applied, it would still be appropriate only where a company is on the verge of financial collapse.  See Moench, 62 F.3d at 572; Pedraza, 456 F. Supp. 2d at 1276; Smith, 422 F. Supp. 2d at 1331; see also Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1098 (9th Cir. 2004) (finding no abuse of discretion where the plaintiff made no allegation that the company was on the brink of collapse).  There is absolutely no such allegation here.  A 25% drop in stock price alone does not demonstrate financial collapse.  Indeed, CCE's financial information evidences that the company is a robust and viable investment option.  From its inception in November 1986 through March 31, 2005, which includes much of the

class period, CCE has demonstrated an annualized investment return of 8.24%. (Defs.' Mot. to Dis., Ex. P.)  In 2004 and 2005, moreover, CCE's gross profit averaged $7.4 billion with average revenues of $18.4 billion.  (Id., Ex. H.) These are not the numbers of an Enron-like corporation teetering on the brink of collapse; nor do the Plaintiffs allege as much.  For all these reasons, the Court finds that this claim warrants dismissal.

> b.       Count IV - Duty to Monitor

The Plaintiffs also contend that the Defendants "were bound to monitor other fiduciaries and to provide them with information sufficient to perform their duties overseeing the Plan and its investments."  (Compl., ¶ 192.)  Because the Court has determined that the Plan's investment in CCE stock was prudent as a matter of law, however, there can be no cause of action for failure to monitor a fiduciary's conduct with respect to this investment.  See Pedraza, 456 F. Supp. 2d at 1278 (concluding that no claim existed for breach of duty to monitor where the Assets Management Committee did not breach a fiduciary duty by offering Coca-Cola stock); Smith, 422 F. Supp. 2d at 1333 ("Plaintiff cannot maintain a claim of failure to monitor when those to be monitored were acting prudently.").  This claim is accordingly dismissed.

> c.       Counts III and V - Duty of Disclosure

Counts III and V allege, in slightly different ways, that the Defendants have a duty to convey complete and accurate information regarding this alleged channel stuffing activity.  The foundation of these allegations is that the Defendants violated their fiduciary duties by failing to disclose material, non-public information regarding CCE's channel stuffing activities to the Plan's participants.  To determine whether the Defendants breached this duty, the Court must first address whether each qualifies as a fiduciary for the purposes of this claim.  "A person or entity becomes an ERISA fiduciary either [1] by being named as a fiduciary in written instruments that govern how an employee benefit plan is established or maintained, or [2] by exercising discretionary authority or control over the management, administration, or assets of a plan." In re Dynegy, Inc. Erisa Litig., 309 F. Supp. 2d 861, 872 (S.D. Tex. 2004). The Committee is the named fiduciary according to the Plan documents.  Each Defendant, other than King-Lavinder and other unnamed Committee Defendants, is thus classified as a fiduciary under ERISA only:

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  Importantly, the fiduciary function is not an "all-or-nothing concept" and a defendant is only a fiduciary **to the extent** that he exercises

discretionary authority "with respect to the particular activity at issue." Cotton v.
Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1277 (11th Cir. 2005) (quoting
Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992)).  "The issue,
therefore, is whether a fiduciary acted in a manner that negatively affected plan
participants while acting as a fiduciary." Hill v. BellSouth Corp., 313 F. Supp. 2d
1361, 1369 (N.D. Ga. 2004).

### i.   Officer Defendants

The Court first finds that the Complaint fails to allege that any individual
Defendant held discretion in regards to the Plan or played any role in its
administration solely by virtue of his role as an Officer of CCE.  As the Officer
Defendants are not alleged to have had any fiduciary duty to provide information to
the Plan's participants, the Court dismisses them.

### ii.   Director Defendants

Because the Directors' only fiduciary responsibility was the appointment of
Committee members, each of these individuals had no duty to inform Plan
participants.  The Complaint also appears to allege, however, that because the Director
Defendants were responsible for appointing the Committee members, they "had a duty
to convey information necessary for the appointees to perform their duties." (Compl.,
¶ 82.)  Several courts have determined that an inherent facet of the duty to monitor is

the duty to keep appointees informed. See, e.g., Woods v. Southern Co., 396 F. Supp. 2d 1351, 1373 (N.D. Ga. 2005) (Story, J.) (recognizing that the duty to monitor includes the responsibility to share material, non-public information with appointed fiduciaries); In re Polaroid, 362 F. Supp. 2d at 477 (finding sufficient under 12(b)(6) the plaintiffs' allegation that a defendant failed to keep plan administrators and fund managers informed); In Re WorldCom, 263 F. Supp. 2d at 765 ("Plaintiffs' allegation that Ebbers failed to disclose to the Investment Fiduciary and the other investing fiduciaries material information he had regarding the prudence of investing in WorldCom stock is sufficient to state a claim."). Here, however, because the Court has determined that there was no violation of the duty to monitor, there can be no corresponding breach of the duty to inform Plan administrators. The Court thus dismisses this claim as to the Director Defendants.

                iii.    CCE, King-Lavinder, and the Unnamed Committee Defendants

       In their motion to dismiss, the Defendants further contend that the Complaint fails to plead facts sufficient to state a claim against CCE, King-Lavinder and the other unidentified Committee Defendants. As to CCE, they argue that because the Plan explicitly identifies CCE as the Plan Sponsor and the Committee as the Plan Fiduciary, CCE cannot hold any fiduciary duty over the Plan. The Plaintiffs have asserted, however, that CCE held a fiduciary duty of disclosure because it was

responsible for composing and disseminating the Summary Plan Description ("SPD"). (Compl., ¶ 72.) They contend that the SPD and the Plan prospectus contained material misrepresentations because it incorporated by reference CCE's SEC filings, which failed to disclose the Defendants' channel stuffing activity.  (Id., ¶¶ 73-75.)

Citing Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 433 (1999) and Lockheed Corp. v. Spink, 517 U.S. 882, 889-90 (1996), CCE contends that the preparation and dissemination of the SPD is part of its sponsorship function and thus does not constitute a responsibility that creates any fiduciary duty under ERISA.  As the Plaintiffs correctly point out, however, "both of those cases deal with decisions to amend a plan, a settlor function, not with the fiduciary functions of drafting and disseminating of SPDs or plan prospectuses."  (Pls.' Resp. to Mot. to Dis., at 17.) Several courts have determined that fiduciary liability exists for dissemination of false statements made in SPD's and plan prospectuses.  See, e.g., In re JDS Uniphase ERISA Litigation, 2005 WL 1662131, at *12 (N.D. Cal. July 14, 2005) ("Plaintiffs further allege that the defendants breached their duty to inform by misrepresentations in JDSU's SEC filings incorporated by reference in the Plan Prospectus ... Courts have held that dismissal at this stage is inappropriate where SEC filings are incorporated by reference into documents provided to plan participants."); In re AEP, 327 F. Supp. 2d at 825 (finding dismissal inappropriate for the defendants' allegedly "ministerial"

decision to provide plan participants with the SPD); In re WorldCom, 263 F. Supp. 2d 745, 766 (S.D.N.Y. 2003) ("Those who are ERISA fiduciaries, however, cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings.").

In response, the Defendants point to other courts that have determined that a plan sponsor who delegates authority for administration of an ERISA plan retains no fiduciary duty. See Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1325 (9th Cir. 1985) ("Once Pertec appointed the Plan Administrator and gave him control over the Plan, Pertec was no longer a fiduciary because it retained no discretionary control over the disposition of claims."); Schultz v. Texaco Inc., 127 F. Supp. 2d 443, 452 (S.D.N.Y. 2001) (same). Each of these cases, however, involved an employee claim arising out of the plan administrator's refusal to award certain ERISA benefits. The employer in each case thus could have had no liability as a fiduciary because there was no allegation that it had any discretion or responsibility in awarding ERISA benefits. The claim here is distinct because the Plaintiffs allege that CCE breached a fiduciary duty in the performance of an act–preparation and dissemination of the SPD–for which it does not deny responsibility. The issue is therefore whether the preparation and dissemination of the SPD and the Plan prospectus constituted fiduciary functions. The Court concludes that it is inappropriate at the dismissal stage to make this determination. See Woods, 396 F. Supp. 2d at 1365 (stating that a court

should be reluctant to dispose of an ERISA claim based on absence of "exacting factual averments respecting the existence of Defendants' fiduciary status of the outer contours of their fiduciary capacities"); In re Sprint Corp. ERISA Litig., 388 F. Supp. 2d 1207, 1228 (D. Kan. 2004) ("[T]he court cannot say that it appears beyond a doubt that plaintiffs can prove no set of facts that would support a conclusion that the Sprint defendants were performing fiduciary functions by disseminating this information."); In re Elec. Data Sys. Corp. ERISA Litig., 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004) (stating that "it is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings.  The issue of fiduciary status is a mixed question of law and fact."); Stein v. Smith, 270 F. Supp. 2d 157, 173-74 (D. Mass. 2003) ("With respect to these statements, the plaintiffs may be able to show the specific contextual facts required by Varity in order to prove that Smith spoke while wearing his 'fiduciary hat,' although no such showing has been (or need be) made at this stage.").  Accordingly, dismissal of this claim would be denied if the alleged fraud were properly plead.

The Complaint also alleges that CCE is a fiduciary because it had control over its officers and employees, including their Plan-related activities. (Compl., ¶¶ 39, 77.) This is effectively a claim for respondeat superior liability.  Courts have split on whether such liability exists under ERISA.  Compare In re AOL Time Warner, Inc. Sec. & ERISA Litigation, 2005 WL 563166, at *4 n.5 (S.D.N.Y. March 10, 2005)

(rejecting corporate respondeat superior liability); National Mgmt. Ass'n v. Transamerica Fin. Res., Inc., 197 F. Supp. 2d 1016, 1023-24 (S.D. Ohio 2002) (dismissing claim of corporate respondeat superior liability for fiduciary breach under ERISA); Tool v. National Employee Benefit Servs., Inc., 957 F. Supp. 1114, 1120 (N.D. Cal. 1996) (same); with American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S., 841 F.2d 658, 665 (5th Cir. 1988) ("The doctrine of respondeat superior can be a source of liability in ERISA cases."); Kling v. Fidelity Mgmt. Trust Co., 323 F. Supp. 2d 132, 145-47 (D. Mass. 2004) (adopting respondeat superior liability under ERISA); Stanton v. Shearson Lehman/American Exp., Inc., 631 F. Supp. 100, 105 (N.D. Ga. 1986) (finding that respondeat superior in the ERISA context "is consistent with this circuit's rule under the securities laws").  This Court agrees with the rationale of those courts that have concluded, consistent with Supreme Court precedent, that "there is no reason to recognize an implied ERISA cause of action under the doctrine of respondeat superior ... since the statute's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'"  In re AOL, 2005 WL 563166, at *4 n.5 (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 254 (1993)) (citation and punctuation omitted).  The Court also finds persuasive Judge Story's statement in Woods that it would be difficult to envision a scenario where a principal would be

liable "under a respondeat superior theory without itself meeting the definition of a functional fiduciary." <u>Woods</u>, 396 F. Supp. 2d at 1370 n.10.  For these reasons, the Plaintiffs' respondeat superior allegations against CCE are dismissed.

As to King-Lavinder and the other unnamed Committee Defendants, finally, there can be no doubt that they were fiduciaries and thus had a duty to disclose any fraudulent channel stuffing about which they knew or should have known.  The Defendants contend that the Complaint fails to state a claim against the Committee Defendants for several reasons.  First, they assert that the Complaint fails to plead any specific facts demonstrating that they knew about the alleged channel stuffing.  The Complaint does allege that the Defendants were "senior CCE employees who knew or should have known all material public and nonpublic information concerning CCE's business and operations that were relevant to the appropriateness of CCE's common stock as a Plan investment." (Compl., ¶ 37.)  The Complaint further alleges that the Defendants:

> [E]ach had access to a variety of widely disseminated internal CCE reports used to track sales volumes, among other things, that disclosed the problems. For example, CCE daily tracked all sales on a database system called "Margin Minder" that generated customized sales reports, including gross sales volume and profit margin comparisons over various time frames. CCE also daily tracked the impact of its sales volume on its financial condition through reports generated from CCE's computer database.

(Id., ¶ 86.)  Because this claim is subject only to notice pleading, the Court finds that the Plaintiffs have adequately alleged that King-Lavinder and the other Committee Defendants were aware of this fraud.  See In re Dynegy, Inc., 309 F. Supp. 2d at 882 (finding as sufficient to state a claim allegations that defendants "knew or should have known by virtue of their positions in the [c]ompany and access to contradictory information ... that the SPD contained affirmative, material misrepresentations").

The Defendants next contend that the Plaintiffs have failed to allege both detrimental reliance on any alleged misrepresentations or how these misrepresentations were "material to any decision to buy and/or hold CCE stock within the plan."  (Defs.' Mot. to Dis., at 34.)  At this point, however, to meet the notice pleading standard, the Plaintiffs need only allege harm to the Plan stemming from the Defendants' breach of fiduciary duty and identify the omissions or misstatements alleged to be in violation of the duty to disclose.  See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 312 F. Supp. 2d 1165, 1183 (D. Minn. 2004).  Furthermore, the Court finds that reliance may be presumed in this instance because these Plaintiffs seek reimbursement to the Plan arising out of a plan-wide, uniform communication rather than an individualized claim.  See In re JDS, 2005 WL 1662131, at *13 (distinguishing claims brought under ERISA §§ 502(a)(1)(B) and 502(a)(2) and finding that the claimants need not show individual detrimental reliance at the pleadings stage in a plan-wide allegation); In re AEP, 327

F. Supp. 2d at 833 (noting that other courts have found an allegation of general reliance sufficient even under Rule 9(b)'s heightened pleading requirements). The Court thus concludes that, in the event the Plaintiffs sufficiently plead their channel stuffing allegations, they have stated a claim for breach of the duty of disclosure against King-Lavinder and the other unnamed Committee Defendants.

### d.   Count VI - Duty of Loyalty

The Complaint also alleges that the Defendants failed to act exclusively in the interests of the Plan's participants, thus violating ERISA §§ 404 and 405. Specifically, the Plaintiffs claim that the Defendants violated their duty of loyalty by failing to engage independent fiduciaries, failing to notify federal agencies about the alleged channel stuffing, failing to take any other necessary steps to protect the interest of the Plan, and generally placing the interests of CCE and themselves above those of the Plan participants. (Compl., ¶ 205.) The duty of loyalty requires a fiduciary to discharge his duties "solely in the interests of the participants and beneficiaries" and "for the exclusive purpose" of providing benefits to them. 29 U.S.C. § 1104(a)(1). The Supreme Court has acknowledged, however, that an ERISA fiduciary:

> [M]ay have financial interests adverse to beneficiaries. Employers, for example, can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers ... or even as plan sponsors (e.g., modifying the terms of a plan as allowed by ERISA to provide less generous benefits).

Pegram v. Herdrich, 530 U.S. 211, 225 (2000); accord In re WorldCom, Inc., 263 F. Supp. 2d at 768.  Again, the issue for the Court's determination is "whether the defendant took an action to affect plan participants adversely while performing a fiduciary function." In re WorldCom, Inc., 263 F. Supp. 2d at 768 (citing Pegram, 530 U.S. at 226).  The Court first notes that the Director Defendants had only a duty to appoint and remove members of the Committee and the Officers did not hold even this responsibility.  Accordingly, because the Court has determined that no breach of the duty to monitor occurred here, neither of these Defendants could have breached a duty of loyalty.

As to CCE, King-Lavinder and the other Committee Defendants, however, the Court finds that the Plaintiffs have pled facts sufficient to survive a dismissal motion. When preparing and disseminating Plan documents, CCE had a duty not to provide false or misleading information to the Plan's participants.  Because such information, if disclosed, would have had a significant negative impact on the price of its stock, CCE had an obvious incentive not to provide this information to Plan participants. The Court thus concludes that the Plaintiffs have stated a claim against CCE.

Furthermore, King-Lavinder and the other unnamed Committee Defendants were Plan fiduciaries and thus had a responsibility to act solely in the interest of the Plan when acting in their fiduciary capacities.  The Complaint alleges that the Defendants "paid particular attention to the problems with CCE's sales volume

because their compensation depended heavily on CCE meeting sales volume and operating income targets and minimizing capital expenditures..."  (Compl., ¶ 87.) This is sufficient to state a claim for breach of the fiduciary duty of loyalty.  See Hill, 313 F. Supp. 2d at 1370 (finding sufficient the claimants' evidence that officers and directors had "an incentive to boost the value of Company stock due to an incentive package that ties salary benefits to Company performance.").[5]

> e.    Count VII - Co-Fiduciary Liability

Count VII alleges that each Defendant is liable for the acts of other Defendants as co-fiduciaries because each Defendant "(a) knowingly participated in, or knowingly undertook to conceal, the breaches of the other fiduciaries; (b) by virtue of his own breach of fiduciary duty, enabled the other Defendants to breach their fiduciary duties; and/or (c) had knowledge of other Defendants' breaches and failed to take reasonable steps to remedy them."  (Compl., ¶ 208.) An individual that has been identified as a fiduciary can be liable for the breach of another fiduciary with respect to the same plan where he (1) "participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;" (2)

---

[5] Because the Plaintiffs have made sufficient allegations against at least King-Lavinder, the Court declines to dismiss these other unnamed Committee Defendants at this stage in the litigation. However, if the Plaintiffs are to maintain a claim against any later identified Committee member, they will obviously be required to provide evidence that each individual held a conflict of interest.

fails to follow his fiduciary duties, thus enabling another fiduciary to commit a breach; or (3) knows of another fiduciary's breach and does not make reasonable efforts to remedy the breach. 29 U.S.C. § 1105(a)(1-3). A primary breach must exist, however, in order for there to be any liability under this provision. See In re Sears, Roebuck & Co. ERISA Litig., 2004 WL 407007, at *8 (N.D. Ill. March 3, 2004). Moreover, only CCE, King-Lavinder and other unnamed Committee members have been identified as potential fiduciaries as to any element of the Plan. Accordingly, only these Defendants can be held liable under this provision. See Useden v. Acker, 947 F.2d 1563, 1581 (11th Cir. 1991) (holding that no claim for damages under ERISA can be sustained against a non-fiduciary for participation in a fiduciary breach).

The Plaintiffs allege that CCE, King-Lavinder and the other unnamed Committee members knew about the alleged channel stuffing and did not disclose it. The Court will address the liability of these Defendants separately. First, as to CCE, the Complaint alleges that it is liable as a co-fiduciary because the company:

> [E]nabled the other Defendants to breach their duties of truthful disclosure by failing to exercise its power and fulfill its duties as a Plan fiduciary to take reasonable actions to prevent the other Defendants from breaching their specific duties. As a co-fiduciary and an Administrator of the Plan, CCE failed to make proper inquiries regarding the Plan's disclosures, management and investment in CCE stock and remained inactive while other fiduciaries breached their duties of truthful disclosure.

(Compl., ¶ 210.)  The Court has determined, however, that CCE is not the Plan administrator and is liable as a fiduciary only to the extent that it failed to disclose the alleged channel stuffing in the SPD or other Plan documents.  Because it had no duty to administer the Plan or to monitor and inform the Committee's members, it could not have had any corresponding duty to prevent these individual Defendants from breaching their fiduciary duties.  The Court thus finds no grounds for imposing liability on CCE under this provision.

This leaves only the Committee Defendants as potential fiduciaries under this statute.  The Complaint alleges that these Defendants violated this provision "by failing to exercise their power and fulfill their duties as Plan fiduciaries to take reasonable actions to prevent the other Defendants from breaching their specific duties."  (Id.)  The Court finds that the Plaintiffs have sufficiently alleged that King-Lavinder and the other unnamed Committee Defendants, to the extent the Plaintiffs are able later to establish fiduciary breaches against other currently unidentified Committee members, should have prevented each other from failing both to disclose the alleged channel stuffing to Plan participants and to prevent CCE from providing Plan documents to participants that were materially false and misleading.  Dismissal of the Committee Defendants is thus inappropriate at this point in the proceedings.

f.    Count VIII - Prohibited Transactions

The Plaintiffs contend, finally, that these Defendants engaged in prohibited transactions in violation of ERISA § 406.  Generally, ERISA prohibits a fiduciary from engaging in a transaction where he knows or should know that the transaction constitutes a direct or indirect sale or exchange of property between the plan and a party-in-interest.  29 U.S.C. § 1106(a).  Exempt from this provision, however, is the acquisition of any qualifying employer security if the acquisition is for "adequate consideration."  Id. § 1108(e).

The Plaintiffs contend that the Defendants allowed the Plan to purchase CCE stock for more than adequate consideration because they knew that the price was artificially inflated due to the fraudulent channel stuffing.   The Plaintiffs' interpretation of the term "adequate consideration" flies in the face of its express definition under ERISA: "adequate consideration ... means ... in the case of a security for which there is a generally recognized market ... the price of the security prevailing on a national securities exchange."   29 U.S.C. § 1002(18)(A).   The Plaintiffs' argument, moreover, has been explicitly rejected in several other district courts.  See Pietrangelo v. NUI Corp., 2005 WL 1703200, at *12-13 (D. N.J. July 20, 2005) (dismissing an ERISA § 406 claim because the plan paid the NYSE market price for company stock); In re CMS Energy ERISA Litig., 312 F. Supp. 2d 898, 917 (E.D. Mich. 2004) (same); In re Honeywell Intern., 2004 WL 3245931, at *14 (D. N.J. Sept.

14, 2004)(finding no sufficient basis for departing from the statutory definition of "adequate consideration"); see also Evans v. Bexley, 750 F.2d 1498, 1500 n.3 (11th Cir. 1985) (noting that courts should interpret ERISA § 406 narrowly, "particularly in light of the inclusion of the sweeping requirements of prudence and loyalty contained in § 404 ...") (citation omitted).

Against this precedent, the Plaintiffs cite only In re Sears, Roebuck & Co., 2004 WL 407007, as an instance where a court determined that the plaintiffs had sufficiently stated a prohibited transaction claim based on similar allegations.  The decision provides absolutely no analysis on the legal merits of the claim, stating only "[t]his allegation places Defendants on notice of the claim being asserted."  Id. at *9. The Court finds that, given both the Eleventh Circuit's instruction that this ERISA provision must be construed narrowly and the well reasoned case law holding that a prohibited transaction claim cannot be sustained under the present circumstances, dismissal is warranted on this claim.

## III. CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss [Doc. 23] is GRANTED.  The Plaintiffs are granted leave to file an Amended Complaint within 30 days from the docketing of this Order.

SO ORDERED, this 19 day of June, 2007.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge